UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAAD ZUHAIR RABIEH,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA, et al.,<br>Defendants. | Case No. 5:19-cv-00944-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 24 |

In April 2016, Plaintiff was allegedly assaulted at the Robert F. Peckham Federal Building in San Jose, California. Defendants argue that, to the extent this allegation is true, they are improper defendants because the Federal Tort Claims Act ("FTCA") bars Plaintiff from pursuing the asserted causes of action against the United States. The Court finds this motion suitable for consideration without oral argument. *See* N.D. Cal. Civ. L.R. 7-1(b). Having considered the Parties' papers, the Court **GRANTS** Defendants' motion to dismiss.

**I.    BACKGROUND**

    **A. Factual Background**

On April 12, 2016, Plaintiff arrived at the Robert F. Peckham Federal Building ("Federal Building") around 10:30 a.m. for an appointment at the Social Security Administration ("SSA") Office. First Amended Complaint ("Compl.") ¶ 25, Dkt. 14. Upon arrival, Plaintiff went through a security scan without incident. *Id.* ¶ 26. After Plaintiff's appointment, when he was attempting to leave, he accidentally activated an alarm upon leaving the building through an emergency exit door. *Id.* ¶¶ 29–30. A security guard approached Plaintiff and signaled for him to wait. *Id.* ¶ 31. This guard was Paragon employee Mario Ayala ("Ayala"). *Id.* Ayala took Plaintiff to the lobby

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
1

area and asked for Plaintiff's identification. *Id.* ¶ 32. Plaintiff complied and handed Ayala his California Driver's License. *Id.*

Plaintiff was seated in the lobby area. *Id.* ¶ 34. Ayala gave Plaintiff's license to guard Jose Leuterio ("Leuterio"). A period of time passed; Plaintiff was waiting for at least 30 minutes. *Id.* ¶¶ 38–40. Plaintiff approached Ayala and asked what the delay was and why he was being held. *Id.* ¶ 40. Ayala told Plaintiff to continue waiting. *Id.* Plaintiff asked Ayala if he could speak to Ayala's supervisor, but Ayala told Plaintiff his supervisor was not present. *Id.* ¶ 41. Plaintiff asked for the supervisor's phone number. *Id.* Ayala dictated the number to Plaintiff, who had taken his cell phone out to type the number. *Id.* ¶ 42. During this interaction, another guard, Joseph Vegas ("Vegas"), approached Plaintiff from behind yelling, "You can't use your phone in here!" *Id.* ¶ 43. Vegas yelled, "Do you want me to arrest you?" and Plaintiff responded, "Arrest me for what?" *Id.* Without warning, Vegas twisted and pinned Plaintiff's right arm behind his back; Leuterio rushed to Plaintiff's right side and began yelling, "Comply" and "He is not complying." *Id.* ¶ 44. Vegas handcuffed Plaintiff's right wrist. *Id.* ¶ 47. Vegas and Leuterio then slammed Plaintiff's left-side body, face-first, into a nearby wall, causing a laceration and abrasions to his left-side body. *Id.* ¶ 46. Because Plaintiff's right wrist was pinned by Vegas, he could not use his hands to soften the blow, which caused a cut on the left side of his head. *Id.* ¶ 47. Plaintiff was next slammed to the floor; his right-side body contacted the floor first, and then the guards turned him face down. *Id.* Plaintiff was then handcuffed. *Id.* He was bloody, bruised and disoriented. *Id.* ¶ 48. Plaintiff alleges that he made no movements during this time; he neither physically nor verbally threatened or resisted the officers. *Id.* ¶¶ 45, 47.

The Paragon guards called the San Jose Police Department ("SJPD") through the Federal Protective Service's ("FPS") Denver Megacenter. *Id.* ¶ 52. Vegas then tightened the handcuffs such that they caused laceration and bruising to Plaintiff's wrists. *Id.* ¶ 53.

**B. Relationship Between FPS and Paragon**

In many federal buildings, a Facility Security Committee ("FSC"), composed of representatives of all federal tenants of the building, decides what security countermeasures to

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
2

implement based on their budgetary constraints and agency priorities. Declaration of Roger Scharmen ("Scharmen Decl.") ¶ 11, Dkt. 26. To aid in these decisions, the FPS provides an assessment of local conditions and security needs, but this recommendation is not binding on the FSC. *Id.* ¶¶ 11, 16. Contract security guards are typically one of the security countermeasures requested by the FSC. *Id.* ¶ 11.

In April 2016, Paragon Systems Inc. (Paragon) provided security screening at the Federal Building. *Id.* ¶ 6. Paragon is a private corporation. *Id.* Under the contract between Paragon and FPS, Paragon provided security services and maintained the day-to-day security at the facility, *i.e.* security and screening. Declaration of Kelly Minturn ("Minturn Decl.") ¶ 6, Dkt. 25. FPS provided oversight of the security contract but did not oversee Paragon employee's day-to-day activities or control the physical performance of the contract. *Id.* The security guards, or Protective Security Officers ("PSOs"),[1] are Paragon employees—FPS has no human resources or personnel department to manage PSOs. *Id.* ¶ 7. Paragon is responsible for most of the training of PSOs, including their certification in lethal and nonlethal weapons, response procedures, and the use of force. *Id.* ¶¶ 8–9. Pursuant to the FPS-Paragon Contract, Paragon provides all management, supervision, equipment, and certifications for PSOs. *Id.* ¶ 8.

Paragon advertises PSO positions and interviews and evaluates candidates. Scharmen Decl. ¶ 10. FPS performs federal background checks for candidates and makes a suitability determination based on information disclosed in that background investigation. *Id.* While Paragon does most of the training, FPS does administer a written examination of PSOs, which they must pass in order to begin work. Scharmen Decl. ¶ 17. Paragon, however, has latitude in working with the contractor to respond to trends or deficiencies shown by the test data. *Id.* FPS officers perform period checks of security posts to ensure compliance with the contract. *Id.* ¶ 15. FPS Directives establish a minimum yearly number of compliance checks, but FPS Officers have discretion to increase them in response to local conditions and the FPS regional director can alter

---

[1] The Court refers to the Paragon private security guards as either Paragon employees or PSOs.
Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
3

the minimum monitoring standard where circumstances permit. *Id.* PSOs are not federal law enforcement officers, they are not empowered by law to make arrests, searches, or seizures. Minturn Decl. ¶ 13. They can perform administrative inspections and detain violent or disruptive persons, but their authority to detain is based on their state's citizen's arrest authority. *Id.* When PSOs discover a prohibited item or believe a person may have committed a federal crime, they contact either FPS or local law enforcement and hold the person until a law enforcement officer arrives to make a constitutional search and seizure. *Id.*

### C. Procedural History

Plaintiff filed his initial complaint on February 20, 2019. Complaint for Damages against United State of America, Dkt. 1. On May 9, 2019, he filed his first amended complaint. First Amended Complaint ("FAC"), Dkt. 14. In this amended complaint, Plaintiff asserts five causes of action: (1) negligence and premises liability, (2) negligent hiring, training, and supervision by Defendants, (3) assault and battery, (4) false imprisonment and false arrest, and (5) negligent infliction of emotional distress.[2] FAC ¶¶ 66–94. Defendants filed a motion to dismiss on July 12, 2019.[3] Motion to Dismiss ("Mot."), Dkt. 24. Plaintiff filed an opposition on July 26, 2019. Opposition re Motion to Dismiss ("Opp."), Dkt. 30. On August 2, 2019, Defendants filed a reply. Reply re Motion to Dismiss ("Reply"), Dkt. 32.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Motion

The question of whether the United States has waived its sovereign immunity is one of

---

[2] California law, as applied in an FTCA case, does not recognize negligent infliction of emotional distress as a separate tort from negligence. *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015). Because Plaintiff's first cause of action is for negligence, his fifth cause of action is redundant and **DISMISSED** with prejudice as it is duplicative.

[3] Plaintiff asserts his claims against several defendants: The United States of America, the U.S. Department of Homeland Security ("DHS"), unknown FPS officers, and the FPS. The only proper defendant in an FTCA action is the United States of America. *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee." (citing 28 U.S.C. § 2679(a)); *see also* 28 U.S.C. § 2679(b)(1). The claims against Defendants FPS, Homeland Security, and unknown FPS officers are thus **DISMISSED**. *See* Mot. at 18.

subject matter jurisdiction and should be considered under a Rule 12(b)(1) standard. *See, e.g.*, *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding Rule 12(b)(1) motion is proper mechanism for motion to dismiss FTCA claim); *Nevin v. United States*, 696 F.2d 1229, 1231 (9th Cir. 1983) (concluding that whether discretionary function exemption applies under FTCA is a question of subject-matter jurisdiction).

Federal Rule of Civil Procedure 12(b)(1) allows a Defendant to attack a complaint for lack of subject matter jurisdiction. A defendant may either challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual attack, the district court may review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment. *Safe Air*, 373 F.3d at 1039; *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). No presumptive truthfulness attaches to the plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating the merits of jurisdictional claims. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 895 (N.D. Cal. 2011). Once the defendant presents extrinsic evidence, the plaintiff, who bears the burden of proving jurisdiction exists, must establish jurisdiction with evidence from other sources. *Id.*; *see also Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

### B. Federal Tort Claims Act (FTCA)

The United States is immune from suit unless it consents to be sued. *Edison v. U.S.*, 822 F.3d 510, 517 (9th Cir. 2016) (citing *Feres v. United States*, 340 U.S. 135, 139 (1950)). The FTCA "waives the sovereign immunity of the United States for actions in tort" and "vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees." *Valadez-Lopez v. Chertoff*, 656 F.3d 581, 855 (9th Cir. 2011). This is a limited waiver of sovereign immunity; the United States is only liable "to the same extent as a private party for certain torts of federal employees . . . in accordance with the law of the place

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

5

where the act or omission occurred." *Edison*, 822 F.3d at 517 (quotation marks and citation omitted); *see also* 28 U.S.C. § 1346(b)(1).

**The FTCA's Independent Contractor Exception.** The limited waiver of sovereign immunity explicitly excludes "any contractor with the United States" from its definition of "[e]mployee of the government." 28 U.S.C. § 2671. This is known as the independent contractor exception to the FTCA and protects the United States from vicarious liability for the negligent acts of its independent contractors. *Edison*, 822 F.3d at 517–18. "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver." *United States v. Orleans*, 425 U.S. 807, 814 (1976). Whether the United States has declined to exercise day-to-day control over the operations of its contractor is not the end of the analysis—the independent contractor exception has no bearing on the United States' FTCA liability for its *own* acts or omissions. *Edison*, 822 F.3d at 518. The United States may be liable if a plaintiff has sufficiently alleged a nondelegable or undelegated duty, which the United States is directly liable for breaching. *Id.*

**Discretionary Function Exception.** The limited waiver of sovereign immunity also excludes acts that are discretionary in nature—"acts that 'involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception does not apply because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. The exception is prevents judicial "second-guessing" of legislative and administrative decisions and thus the exception should only protect "government actions and decisions based on considerations of [social, economic, and political] policy." *Berkovitz*, 486 U.S. at 537.

**Intentional Tort Claims Exception.** The FTCA limits its waiver of sovereign immunity for claims involving assault, battery, false imprisonment, and other intentional torts—these may only be brought if the federal employees who committed the tort are "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). Investigative or

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

6

law enforcement officer means "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Immunity determinations for intentional torts thus depend on a federal officer's legal authority, not on the particular exercise of that authority. *Millbrook v. United States*, 569 U.S. 50, 56 (2013). Under the statute, an intentional tort is not actionable unless it occurs while the law enforcement officer is "acting within the scope of his office or employment." *Id.* at 57 (quoting 28 U.S.C. 2680(h)). Hence, if the intentional tortfeasor is not a federal officer, the court has no jurisdiction under the FTCA to consider the intentional tort.

### III. DISCUSSION

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims because they are outside the scope of the FTCA's waiver of sovereign immunity. *See* Mot. at 7–18. Defendants assert that either the claims are barred by either the intentional tort claims, independent contractor, or discretionary function exceptions. *Id.* Defendants bring a factual 12(b)(1) attack, Plaintiffs argue this is improper. Thus, the Court must first determine if it can consider extrinsic evidence and resolve factual disputes without converting this motion into one for summary judgment.

#### A. Consideration of Extrinsic Evidence/Resolution of Factual Disputes

A court may consider extrinsic evidence in a Rule 12(b)(1) motion without converting it into one for summary judgment. *Safe Air*, 373 F.3d at 1039. Plaintiff argues, however, that it is improper for the Court to consider Defendants' extrinsic evidence because "the question of jurisdiction depends on the resolution of factual issues going to the merits." Opp. at 5 (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("The relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction in a case . . . where issues of jurisdiction and substance are intertwined.").

A court may use a factual Rule 12(b)(1) motion to resolve issues of jurisdiction where the question of jurisdiction is separate from the resolution of factual issues going to the merits. *See Roberts*, 812 F.2d at 1177. Hence, if the jurisdictional issues are separate "threshold" questions, a

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

7

factual Rule 12(b)(1) motion is proper. Questions of whether FTCA exceptions apply fit within this category—they are distinct, threshold questions of jurisdiction and thus can be resolved using a Rule 12(b)(1) standard. *See, e.g.*, *Edison*, 822 F.3d at 517 (approving of Rule 12(b)(1)'s use in determining if independent contractor exception applied); *SAI v. Smith*, 2018 WL 534305, at *4–6 (N.D. Cal. Jan. 24, 2018) (assessing whether independent contractor and discretionary function exceptions applied to TSA screeners pursuant to a factual Rule 12(b)(1) motion).

To rebut this case law, Plaintiff cites to *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090 (9th Cir. 2008) and *In re Wilshire Courtyard*, 729 F.3d 1279 (9th Cir. 2013) as support that the resolution of the jurisdictional issues using extrinsic evidence is improper. Opp. at 5. Neither of these cases, however, discuss or analyze the FTCA or whether FTCA exceptions present threshold jurisdictional issues. Further, neither involves a factual Rule 12(b)(1) motion. Thus, these cases are inapplicable.

Plaintiff also cites to *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) and *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004). Both held that jurisdictional dismissal is inappropriate in an FTCA "scope-of-employment" case because "scope-of-employment issues" are determinative of both jurisdiction and the underlying merits. *Kerns*, 585 F.3d at 196; *Montez*, 392 F.3d at 148. In *Montez*, the court followed the general rule that "a jurisdictional attack intertwined with the merits of an FTCA claim should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a Rule 12(b)(1) motion improper." 392 F.3d at 150. In *Kerns*, however, the court explicitly stated that the same "general rule" would not apply to disputes involving whether the independent contractor or discretionary function exceptions applied because those are separable jurisdictional issues. 585 F.3d at 196.

> Our conclusion that a Rule 12(b)(1) dismissal was inappropriate in this case is not undermined by our decision in *Williams v. United States*, 50 F.3d 299 (4th Cir.1995), where we approved dismissal of an FTCA claim under Rule 12(b)(1). The disputed issues in *Williams*—whether the alleged employee was an independent contractor and whether the discretionary-function exception applied—*were threshold issues wholly unrelated to the basis for*

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
8

> *liability under the FTCA.* For example, whether the Government had managed or supervised the activities of the alleged tortfeasor in *Williams*, thereby rendering the tortfeasor an independent contractor rather than an employee, was not an issue intertwined with the merits of the FTCA claim then being pursued. With the scope-of-employment issue in this case, however, the conduct of Scott herself, rather than her status, is determinative of both jurisdiction and the merits of the FTCA claim.

*Id.* (emphasis added).

Plaintiff's case law is thus inapposite—the issue at hand is *not* whether the Paragon guards were "acting in the scope of employment," it is whether: (1) Paragon guards are "investigative or federal law enforcement officers," (2) FPS exercised substantial supervision over the guards, and (3) the security policies were an exercise of the discretionary function. *Cf. Kerns*, 585 F.3d at 196; *Montez*, 392 F.3d at 148 (discussing "scope of employment" issues). While Defendants provide no case law stating that the intentional torts exception may be raised in a Rule 12(b)(1) motion, the Court finds the reasoning of *Kerns* analogous: whether Paragon guards are "federal officers" within the meaning of 28 U.S.C. § 2680(h) is distinct from whether they committed intentional torts. Likewise, the independent contractor and discretionary function exceptions present threshold questions that distinct from the merits—their resolution has no bearing on the conduct of the Paragon officers or the FPS. Thus, this Court will apply Rule 12(b)(1)'s factual attack standard and need not convert Defendants' motion into a Rule 12(b)(6) motion to dismiss or Rule 56 motion for summary judgment.

### B. Intentional Tort Claims Exception

Plaintiff asserts two intentional tort claims: assault and battery (third cause of action) and false imprisonment and false arrest (fourth cause of action). For these intentional torts to fall within the FTCA's waiver of sovereign immunity, the tortfeasor must be an "investigative or law enforcement officer of the United States Government" who is "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *See* 28 U.S.C. § 2680(h) (listing assault, battery, false imprisonment, and false arrest). Defendants argue that because the Paragon guards are not "investigative or law enforcement officers," the FTCA does not permit this Court to hear the intentional tort claims. Mot. at 16–18.

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
9

In *Wilson v. United States*, the Second Circuit held that parole officers are not "investigate or law enforcement officers" because (1) federal law does not vest them with the power to make arrests, but only "recommend that [issuance of] an arrest warrant" and (2) they can only perform consensual searches of parolee property and thus are not empowered by law to "execute searches" or "seize evidence." 959 F.2d 12, 15 (2d Cir. 1992). Federal courts have further concluded that Transportation Safety Administration ("TSA") screeners are not "investigative or law enforcement officers" within the meaning of Section 2680(h). *See, e.g.*, *Walcott v. United States*, 2013 WL 5708044, at *2 (E.D.N.Y. Oct. 18, 2013) ("As several other district courts have concluded, TSA screeners are not 'investigative or law enforcement officer[s]' within the meaning of § 2680(h)." (alteration in original)); *Id.* at *3 (collecting cases). The *Walcott* court noted screeners are not empowered by law to "seize evidence" or "execute searches;" federal law delegates that authority to "law enforcement officer[s] . . . with different job qualifications and responsibilities." *Id.* at *2. TSA screeners may only conduct narrow, specific administrative searches. *Id.* If a screener finds something illegal, "[they are] not authorized to arrest the person or seize the item, but instead must call a Port Authority police officer to do so." *Id.* The *Walcott* court thus held that TSA screeners were not "investigative or law enforcement officer[s]." *Id.* at *1. While some cases have reached an alternative conclusion, that is irrelevant here: Plaintiff alleges no federal law that authorized or directed Paragon employees to search, seize, or arrest building entrants. *Compare Armato v. Doe 1*, 2012 WL 13027047, at *3–4 (D. Ariz. May 15, 2012) (holding TSA agents qualify as "investigative or law enforcement officer[s]" because federal law authorized TSA agents to "screen," *i.e.*, search, passengers), *with* Compl. ¶¶ 15, 18 (alleging Paragon security guards, who are directed by contract, not federal law, to search entrants to the SSA Office, assaulted him).

Contrary to Plaintiff's assertion, Paragon PSOs are not FPS officers. *Cf.* Compl. ¶ 15 (addressing Plaintiff's intentional tort claims and stating "the relevant acts and/or omissions of the FPS officer(s) caused Plaintiff's injuries"). Paragon PSOs are not empowered by federal law to perform searches, make seizures, or arrest anyone. Minturn Decl. ¶ 13. In fact, much like TSA screeners, PSOs are only permitted to carry out administrative inspections and detain people who

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
10

are disruptive, violent, suspected of committing a crime, or violating federal regulations while on federally-owned property. *Id.*; *see also Wilson*, 959 F.2d at 15. In the related state action, PSOs testified they only have power to detain (not arrest) individuals on federal property because they are only "security" guards. Scharf Declaration ("Scharf Decl."), Ex. B at ECF 5, Dkt. 29. If the PSOs do detain someone, they are instructed to contact the FPS Megacenter, who dispatches an FPS office or local law enforcement officer who can perform a constitutional, statutorily authorized arrest, if necessary. Minturn Decl. ¶ 13. Indeed, here, after Plaintiff was detained, Paragon employees contacted FPS Megacenter. Lopez Declaration ("Lopez Decl.") ¶ 5, Dkt. 27. PSOs are therefore not "investigative or federal law enforcement officer[s]" because they lack the power to "execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h); *Wilson*, 959 F.2d at 15; *Walcott*, 2013 WL 5708044, at *2–3.

Plaintiff does not respond to Defendants' arguments that Paragon employees are not "investigative or law enforcement officers of the United States Government." Mot. at 16–17. Plaintiff argues only that FPS is a law enforcement agency with law enforcement officers, but this misses the point. Opp. at 16. Defendants' argument is not whether FPS is a federal agency with federal officers, but whether the Paragon guards are "investigative or federal law enforcement officers." As demonstrated above, private security guards are not federal law enforcement officers. The law requires that the specific intentional tortfeasor be a law enforcement officer, not that they work at, or in connection with, a law enforcement agency . *See Millbrook*, 569 U.S. at 56. No FPS officer was on scene during the alleged assault and the alleged tortfeasors are Paragon guards, who are not "federal officers." *See* Lopez Decl. ¶¶ 5–6; Compl. ¶¶ 42–53. Thus, Plaintiff has not alleged the intentional torts were committed by an "investigative or federal law enforcement officer." Accordingly, the intentional torts exception applies and Defendants' motion to dismiss is **GRANTED** for claims three and four.

### C. Independent Contractor Exception

The FTCA's limited waiver of sovereign immunity explicitly excludes "any contractor with the United States" from its definition of "employee of the government." 28 U.S.C. § 2671.

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
11

The United States cannot be vicariously liable for the acts of an independent contractor. *Edison*, 822 F.3d at 517. Some duties, however, are nondelegable and the United States can remain directly liable for its *own* torts. *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995).

Defendants argue that Plaintiff's first cause of action (negligence and premises liability) must be dismissed because this Court lacks subject-matter jurisdiction over it since it is outside the scope of the FTCA. Mot. at 7. Plaintiff rebuts this using two theories: (1) Paragon guards are not independent contractors because FPS exercised sufficient day-to-day control over the guards and (2) FPS had a non-delegable duty over the armed security guards. Opp. at 7. The Court addresses these arguments in turn.

### 1. Sufficient Control/Substantial Supervision

"A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 814 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). "Under the FTCA, the United States is subject to liability for the negligence of an independent contractor only if it can be shown that the government had authority to control the detailed physical performance of the contractor and exercised substantial supervision over its day-to-day activities." *Laurence v. Dep't of Navy*, 59 F.3d 112, 113 (1995).

Where a contract directs the performance of the independent contractor, this generally will not convert the independent contractor into a government employee. *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005). The United States may fix "specific and precise conditions to implement federal objectives" without becoming liable for an independent contractor's negligence. *Orleans*, 425 U.S. at 816. Standards that are designed to "secure federal safety objectives" also do not convert an agent into an employee. *Autery*, 424 F.3d at 957. Detailed regulations and inspections are not evidence of an employee relationship. *Id.* Thus, "the ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees." *Id.* There must be "*substantial* supervision" over the contractor to find the individual was acting as a government employee. *Id.* (emphasis added). As Plaintiff notes, the

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
12

government must have the authority to control the "*detailed* physical performance of the contractor." Opp. at 7 (quoting *Letnes v. United States*, 820 F.2d 1517, 1518 (9th Cir. 1987)) (emphasis added).

Plaintiff argues that because the Paragon employees needed direction from FPS following the sounding of the emergency exit alarm, FPS controlled Paragon employees' day-to-day activities and substantially supervised them. Opp. at 11–12. Plaintiff also argues that Paragon employees were not independent contractors because they referred to FPS Officer Lopez as their "supervisor." Opp. at 12. Finally, Plaintiff argues that an online report by the Government Accountability Office ("GAO") shows substantial supervision because it states the FPS "manages and oversees 13,500 PSOs" at various federal facilities. Opp. at 12. None of these arguments allow the Court to conclude FPS "substantially oversaw" and controlled the day-to-day activities of the guards.

First, the fact that Paragon PSOs were directed to contact FPS after the sounding of the alarm does not show that FPS controlled the "detailed physical performance" of Paragon employees. *Letnes*, 820 F.2d at 1518. The PSOs testified that they only made calls for someone setting off the building emergency exit alarm about "once per year." Scharf Decl., Ex. A at 11, Ex. B at 103. Further, Paragon managed the details of employment. FPS/DHS did not maintain a personnel department to manage PSOs. Minturn Decl. ¶ 6. Paragon, not FPS, supervised, managed, and equipped PSOs, while FPS only provided contractual oversight to ensure compliance with the Contract. *Id.* ¶ 8. Paragon maintained PSO competency and disciplined its PSOs. *Id.* ¶ 11. FPS's main involvement with PSOs was setting specific requirements for the security contract and ensuring compliance with its terms. *Cf. Orleans*, 425 U.S. at 816 (noting that the United States may fix "specific and precise conditions to implement federal objectives" without converting a contractor to a federal employee). Thus, the instruction to call FPS once someone set off the alarm is not "substantial supervision," especially considering that Paragon, rather than FPs, mainly oversaw Paragon employees. *See Macharia v. United States*, 238 F. Supp. 2d 13, 27 (D.D.C. 2002) ("Broad supervisory control, even on a daily basis, does not suffice to

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
13

demonstrate control over the physical performance of the contractor."); *Singh v. S. Asian Soc'y of George Washington Univ.*, 572 F. Supp. 2d 1, 10 (D.D.C. 2008) ("Requirements that a contractor comply with certain regulations, specifications, or standards [like the requirement that all incidents be reported to FPS] in performing its work do not, alone establish that the United States supervised the contractor's day-to-day operation . . . .").

Second, Plaintiff submitted evidence contradicting his assertion that Officer Lopez was the PSOs' "supervisor." *See* Pia Kim Declaration ("Kim Decl."), Ex. 5 at 7, Dkt. 31 (police report states supervisor name as Officer Lopez). In Exhibit 6 to the Kim Declaration, PSO Ayala affirms that Lieutenant Meza, a Paragon employee, is his supervisor. Kim Decl., Ex. 6 at 3 ("I want to talk to your supervisor. I gave him Lt Meza phone # . . . . Mr. Rabieh decided to call Lt Meza); *see also* Second Declaration of James A. Scharf ("Second Scharf Decl."), Ex. A at 16–18, Dkt. 33 (testifying that Lieutenant Meza was his supervisor); *Id.* Ex. B at 91–92 (Plaintiff testifying that he remembers supervisor was Lieutenant Meza). Because this is a Rule 12(b)(1) motion, the Court can resolve factual disputes. Considering the evidence, there is more evidence (made under oath) showing Lieutenant Meza was the supervisor of the Paragon employees, not Officer Lopez.

Finally, in the GAO report, on the same page Plaintiff cites, it refers to PSOs as "contract guards" and "a contracted security workforce." Kim Decl., Ex. 4 at 5. The forty-page report spends only two-pages discussing PSOs and notes, "FPS did not include PSOs in its staffing model," further indicating that PSOs are not part of the FPS workforce but are contract workers. *Id.* at 4.

Accordingly, Plaintiff has not shown that the FPS exercised sufficient supervisory control over the day-to-day activities of Paragon PSOs.

### 2. Nondelegable Duty

Plaintiff argues that even if FPS did not exercise day-to-day supervision over Paragon employees, the federal government is still liable because it owed him a nondelegable duty. He argues "liability will attach for the government's 'nondelegable duty to ensure that the contractor employs safety procedures.'" Compl. ¶ 14 (quoting *Edison*, 822 F.3d at 518 n.4). This principle

is much narrower than Plaintiff contends: the full passage reads "Under the FTCA, the United States may not be held vicariously liable. However, [peculiar risk] liability has been construed as creating direct liability for the government's nondelegable duty to ensure that the contractor employs proper safety procedures." *Edison*, 822 F.3d at 518 n.4 (alteration in original). Thus, where an employer has delegated some responsibilities to an independent contractor, the employer may still be liable if the delegated responsibilities were "nondelegable" because the work performed is "inherently dangerous" or presents a "peculiar risk."[4] *Id.* at 518 & n.4.

Plaintiff focuses on the United States' alleged nondelegable duty in his opposition. Opp. at 13. Plaintiff argues that under landowner premise liability, Defendants are still liable for Paragon PSOs' acts or omissions.[5] Opp. at 9, 13 n.4. According to Plaintiff, under California law, the proprietors of business premises also "owe a duty to their patrons to maintain their premises in a reasonably safe condition," which "includes an obligation to undertake 'reasonable steps' to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." *Id.* at 9 (citing *Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1165 (Cal. 2005). Of course, often these "reasonable steps" can include the hiring of security guards. *Delgado*, 113 P.3d at 1166.

In *Schreiber v. Camm*, the court held that the use of armed security guards to protect one's property is not so inherently dangerous as to confer a nondelegable duty upon the landowner. 848

---

[4] Plaintiff refers to Defendants argument surrounding peculiar risk as "inexplicable." Opp. at 13 n.4. Defendants refer to this because Plaintiff cited the quote in his First Amended Complaint. Compl. ¶ 14. Plaintiff seemingly reclassifies his argument as a nondelegable duty argument based on landowner premises liability. To the extent "peculiar risk" is still in issue, the Court agrees with Defendants that Plaintiff does not allege any peculiar risk posed by Paragon security guards and that it would be difficult to consider the provision of security guards as presenting a peculiar risk to the public. Mot. at 11; *see also e.g.*, *Chaffin v. United States*, 176 F.3d 1208, 1214 (9th Cir. 1999) (recognizing peculiar risks as dangers posed by truly extraordinary circumstances like polar bear attacks).

[5] Plaintiff also argues negligent hiring is a nondelegable duty. Opp. at 9 (citing *Hawkins v. Wilton*, 51 Cal. Rptr. 3d 1, 5 (Cal. Ct. App. 2006) (stating that the employer of security guards may be liable for the assaults of the security guard if the guards were negligently hired or placed in a position to commit foreseeable acts). The Court, however, does not address this argument here—negligent hiring, supervision, and training is Plaintiff's second cause of action. Defendants do not argue that the second cause of action is barred by the independent contractor exception, and thus Plaintiff's briefing on this subject is inapplicable.

F. Supp. 1170, 1177 (D.N.J. 1994). Plaintiff's premises liability claim focuses on Defendants' alleged negligence in securing the safety of visitors to the Peckham Federal Building. Compl. ¶ 67. Plaintiff provides *no* facts showing Defendants negligently failed to take "reasonable steps"[6] to secure the building or that the use of Paragon guards was so dangerous that FPS had a nondelegable duty over their actions. The mere presence of armed guards is insufficient to establish a nondelegable duty[7] as Plaintiff presents no case law showing armed security guards are inherently dangerous. *See Schreiber*, 848 F. Supp. at 1177 (holding deployment of armed security guard is not inherently or abnormally dangerous activity, absent knowledge of the dangerous propensities of the guard). Further, Plaintiff has not shown Defendants failed to take "reasonable steps." *Delgado*, 113 P.3d at 1165. Thus, Plaintiff has not shown a non-delegable duty.

Accordingly, because Plaintiff has not shown either day-to-day supervision or a nondelegable duty, the FTCA's independent contractor exception applies and Defendants' motion to dismiss is **GRANTED** for claim one.

### D. Discretionary Function Exception

Defendants argue that Plaintiff's negligent hiring, supervision, and training claim (claim two) must be dismissed because it falls under the FTCA's discretionary function exception. The exception applies to government action that is of the type that is "susceptible to policy analysis"

---

[6] The Court does not understand if Plaintiff is arguing the premises themselves were unsafe *or* if the presence of the guards presented a nondelegable duty on the landowner to make the premises safe. The reasoning provided should not be construed as evaluating a negligence argument, which typically would be brought under Rule 12(b)(6), using Rule 12(b)(1). The Court, however, cannot construe Plaintiff's argument because it is unclear what Plaintiff is arguing. Should Plaintiff amend his complaint, he is instructed to clearly allege the facts constituting negligence versus premises liability.

[7] Defendants also argue this claim should be dismiss under the discretionary function exception because security decisions, like the implementation of security measures, are discretionary. *See Macharia v. United States*, 238 F. Supp. 2d 13, 25–26 (D.C. Cir. 2002) (holding "[d]ecisions regarding how much safety equipment should be provided to a particular embassy, how much training should be given to guards and embassy employees, and the amount of security-related guidance that should be provided necessarily entails balancing competing demands for funds and resources" are exactly the type of discretionary functions Congress had in mind). Because Defendants have discretion in implementing the level of security measures they deem appropriate, based on security needs and resource constraints, the Court agrees that claim one is also barred by the discretionary function exception.

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
16

and "grounded in social, economic, and political policy." *O'Toole v. United States*, 295 F.3d 1029, 1033–34 (9th Cir. 2002). The court must first ask whether the challenged action was discretionary, *i.e.*, whether it was governed by a mandatory statute, policy, or regulation. *Whisnant v. United States*, 400 F.3d 1177, 1180–81 (9th Cir. 2005). Next, the court asks whether the challenged action is of the type Congress meant to protect. *Id.* As an initial matter, the challenged action is not governed by a mandatory statute, policy, or regulation and FPS directives allow FPS significant discretion in construing contract compliance by PSOs. Scharmen Decl. ¶ 15. Plaintiff does not contest that step one is inapplicable.

Regarding step two, Plaintiff argues that "judgments *concerning safety*—are rarely considered to be susceptible to social, economic, or political policy." Opp. at 14 (quoting *Whisnant*, 400 F.3d at 1181). Plaintiff argues that any decision related to safety and law enforcement decisions is outside the discretionary function exception. *Id.* But, a mere relation to issues of public safety does not place the case outside the discretionary function exception—where the case relates to the design of safety measures and precautions, as opposed to their deficient execution or implementation, it generally is "shielded by the discretionary function exception." *See Whisnant*, 400 F.3d at 1181–82. Likewise, matters of scientific and professional judgment, especially judgments concerning safety, are rarely "considered to be susceptible to social, economic, or political policy." *Id.* at 1181.

Plaintiff argues FPS was negligent in designing its directives and written safety policies, specifically its requirement that an FPS officer be called if a visitor set off an emergency alarm and its "written safety policies regarding the use of force, weapons, and detention." Opp. at 14. These "directives" and "written safety policies" are safety measure "designs" and are thus within the discretionary function exception. *See Whisnant*, 400 F.3d at 1181–82. Moreover, as established in the factual background section of this order, FPS's role in the hiring, supervising, and training of PSOs is adjustable. *See supra* I.A. The level of FPS supervision of contractor guards implicates the use of FPS officers' time and resources. Therefore, decisions surrounding how many guards to hire, and the use of FPS officers, implicate judgments based on "social,

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
17

political, or economic policy." Hence the mere fact that these relate to safety issues does not mean the discretionary function exception is per se inapplicable. *Cf. Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." (collecting cases)); *SAI*, 2018 WL 534305, at *5 ("The Ninth Circuit has made clear that claims for negligent supervision of employees falls squarely under the discretionary function exception.").

Accordingly, because the discretionary function exception applies to Defendants' hiring, supervision, and training decisions, Defendants' motion to dismiss is **GRANTED** for claim two.

### E. Limited Discovery

Plaintiff seeks limited jurisdiction discovery. Opp. at 6 n.2. A plaintiff seeking limited jurisdictional discovery in FTCA cases must allege "enough fact to raise a reasonable expectation that discovery will reveal the evidence he seeks." *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 751 (9th Cir. 2013) (noting the broad discretion vested in the trial court to permit or deny discovery). Plaintiff does not explain in footnote two what discovery he seeks or why it is likely to undermine Defendants' arguments. *See Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, (C.D. Cal. 2010) ("Additional discovery is not appropriate at present. Plaintiffs have not pleaded 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the sought-after SEC policies and guidelines." (quoting *Twombly*, 550 U.S. at 556)). Plaintiff has not even explained what evidence he seeks, let alone why discovery presents a reasonable expectation of revealing evidence he seeks. Accordingly, Plaintiff's request for discovery is **DENIED.**

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. When a court grants a motion to dismiss, the court may grant the plaintiff leave to amend a deficient claim "when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants do not argue leave to amend would be futile. Plaintiff may file an amended complaint, except as to the negligent infliction of

Case No.: 5:19-cv-00944-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
18

emotional distress claim, which is dismissed with prejudice. If Plaintiff chooses to file an amended complaint, it must be filed by December 2, 2019.

**IT IS SO ORDERED.**

Dated: November 6, 2019

EDWARD J. DAVILA
United States District Judge